# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| PERDIEMCO, LLC., | § § § | |
| *Plaintiff*, | § § | Case No. 2:15-CV-00727-JRG-RSP |
| v. | § § | |
| INDUSTRACK LLC, | § § § | |
| *Defendant*. | § § § | |

| | | |
|---|---|---|
| PERDIEMCO LLC, | § § § | |
| *Plaintiff*, | § § | Case No. 2:15-CV-00726-JRG-RSP |
| v. | § § | |
| GEOTAB INC., GEOTAB USA, INC., | § § § | |
| *Defendants*. | § § | |

## **REPORT AND RECOMMENDATION**

Currently before the Court is PerDiem's Rule 56(a) Motion for Summary Judgment on Geotab's standing defense (Dkt. 172) and Geotab's Rule 12(b)(1) Motion to Dismiss for lack of standing (Dkt. 198). The Court finds that a preponderance of evidence supports PerDiem's standing to sue. Accordingly, Geotab's Motion to Dismiss must be DENIED, and PerDiem's Motion for Summary Judgment must be DENIED AS MOOT.

### I. BACKGROUND

On May 5, 2015, PerDiem filed suit against Geotab, accusing Geotab of infringing patents related to locating and tracking objects, for example, through Global Positioning System

(GPS) satellites. *See* Member Case No. 2:15-cv-00726, Dkt. 1 (Complaint). PerDiem currently asserts three patents against Geotab: U.S. Patent Nos. 8,223,012, 9,003,499, and 9,071,931. These patents are all continuations claiming priority to U.S. Patent Application No. 11/335,699 ("the '699 application").

On January 19, 2006, named inventor Darrell Diem executed a written assignment assigning the '699 application, together with "any and all divisions, continuations, in whole or in part, substitutions, renewals, reissues, reexaminations, and extensions thereof, and all applications claiming priority therefrom," to PerDiem, LLC. Dkt. 172-2. On October 8, 2008, PerDiem, LLC assigned these patent rights to Robert Babayi and Mark Roberts. Dkt. 172-3. On December 21, 2011, Babayi and Roberts assigned the rights to Geofence Data Access Controls LLC (GDAC), Dkt. 172-4, and on May 12, 2015, GDAC assigned the rights to Plaintiff PerDiemCo LLC ("Perdiem"). Dkt. 172-5.

Mr. Diem testified during deposition that he conceived and developed the inventions claimed in the patents-in-suit sometime in 2004 or 2005 while he was employed as a software engineer at Time Domain Corporation in Huntsville, Alabama. *See, e.g.*, Dkt. 198-6 at 316:19-25, 317:7-20; Dkt. 198-2. Before Mr. Diem began employment with Time Domain on October 30, 2000, *see* Dkt. 198-2 at 2, Mr. Diem executed an "Employment Agreement" dated October 5, 2000, *id.* at 16, and a "Time Domain Corporation Employee Non-Disclosure Agreement and Proprietary Rights Assignment Agreement" (the "Assignment Agreement") on October 7, 2000, *id.* at 21. Though the Employment Agreement and Assignment Agreement were separate documents, the Employment Agreement incorporated the Assignment Agreement by reference. Dkt. 198-2 at 4 ¶ 4. The Employment Agreement includes a merger and integration clause, providing "there are no other agreements or understandings between us, oral or written except as

set forth herein, or unless specifically entered in to in writing between the Employee or Offeree and authorized representative of the Company." Dkt. 198-2 at 17 ¶ 8.

The Assignment Agreement contains the following invention disclosure provision:

> I will promptly disclose and describe to Company all inventions, improvements, discoveries, technical developments, and works of authorship, whether or not patentable or copyrightable, which I conceive, reduce to practice, or author, solely or jointly with others, relating to or useful to Company's business as presently conducted or as conducted at any future time during my term of employment ("Work Product").

Dkt. 198-2 at 19 ¶ 3. The Assignment Agreement also includes the following assignment clause:

> I *hereby assign* to Company my entire right to all the Work Product, which Work Product is and will be the sole and exclusive property of Company; *provided however, that I shall not be required to assign* to Company *any invention that I developed entirely on my own time without using Company's funds, equipment, materials, facilities or trade secret information except* for those inventions that either: (i) relate at the time of conception or reduction to practice of the invention to Company's business, or actual or demonstrably anticipated research or development of Company, or (ii) result from or are related to or suggested by any Company research, development or other activities, including, without limitation, any work performed by me for Company."

Dkt. 198-2 at 19-20 ¶ 3 (emphasis added).

Mr. Diem retained a copy of the Employment and Assignment Agreements, but PerDiem did not produce the Agreements during discovery on the ground that the Agreements were labeled confidential, and PerDiem had not obtained Time Domain's consent. *See* Dkt. 198 at 3. Geotab obtained a copy of the Agreements on July 12, 2016, after serving a subpoena on Time Domain. *Id.*

PerDiem moved for summary judgment on August 1, 2016, contending that GeoTab "raised no triable issue of fact" supporting its pleaded-defense that PerDiem lacks standing. Dkt. 172 at 1. Geotab responded on August 18, 2016, opposing PerDiem's motion and moving to

dismiss the case for lack of subject-matter jurisdiction, contending that PerDiem does not own the patents-in-suit. Dkt. 198.

## II. DISCUSSION

Geotab argues that PerDiem lacks standing, regardless of whether it has current paper title, because as soon as Mr. Diem invented the subject-matter claimed in the patents-in-suit, the invention automatically transferred to Time Domain under the Assignment Agreement. The chain of title leading to PerDiem is meaningless, according to Geotab, because Mr. Diem never had anything to assign. For its part, PerDiem argues as a threshold matter that Geotab is estopped from disputing patent ownership. Dkt. 172 at 3. PerDiem also disputes the merits of Geotab's position, which the Court will address after considering PerDiem's estoppel argument.

### A. Estoppel

According to PerDiem, Geotab is estopped from disputing patent ownership because Geotab admitted in its Answer that Mr. Diem's employment is "irrelevant to any issues in this case." Dkt. 172 at 3. Because "[f]actual assertions in pleadings are judicial admissions conclusively binding on the party that made them," PerDiem insists that Geotab waived or is estopped from disputing PerDiem's ownership. *Id.* (quoting *Morales v. Dep't of Army*, 947 F.2d 766, 769 (5th Cir. 1991)). Geotab questions PerDiem's premise, arguing that "standing is not subject to waiver." Dkt. 198 at 16 (quoting *United States v. Hays*, 515 U.S. 737, 742 (1995).

The Court agrees with Geotab that a standing defense may not be waived—parties cannot stipulate or consent to a federal court's subject matter jurisdiction. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "Parties can, however, stipulate to facts that form the basis of subject matter jurisdiction." *Woolwine Ford Lincoln Mercury v. Consol. Fin. Res., Inc.*, 245 F.3d 791 (5th Cir. 2000). "[P]arties may admit

4

the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission." *Pittsburgh, C. & St. L.R. Co. v. Ramsey*, 89 U.S. 322, 323 (1874).

Geotab's Answer expressly states that "[i]t is . . . irrelevant to *any issues* presented in the . . . Complaint whether [Mr. Diem] allegedly obtained his Masters degrees, allegedly worked for Motorola, Harris Corporation, Time Domain, or any other company." Member Case No. 2:15-cv-00726, Dkt. 20 at 2 ¶ 3 (emphasis added). PerDiem's Complaint alleges that "PerDiem is the exclusive owner of all rights, title, and interest" in the patents-in-suit and that PerDiem "has the right to bring this suit." *Id.*, Dkt. 17 at 4 ¶ 16. PerDiem's ownership is an "issue" presented in the Complaint, and Geotab's admits that Mr. Diem's employment with Time Domain is irrelevant to that issue. Geotab did not seek leave to amend its Answer.

The Court will not, however, bind Geotab to its admission. PerDiem had possession of the relevant Employment and Assignment Agreements, and PerDiem did not produce the Agreements on the ground that it had not obtained Time Domain's consent. Given these circumstances, the Court finds it sufficient that Geotab alleged in its Answer that "PerDiem lacks standing to bring this suit to the extent PerDiem lacks substantial rights to the patents-in-suit." *Id.*, Dkt. 20 at 10 ¶ 77. Accordingly, the Court finds PerDiem's more general factual admission to be non-binding. The Court turns now to the merits.

### B. Standing to Sue for Patent Infringement

Article III standing is a constitutional requirement and a threshold jurisdictional issue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "The standing inquiry enforces this constitutional restriction on the power of the courts." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338-39 (Fed. Cir. 2007). Constitutional standing requires the plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the

requested relief." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The injury requirement "often turns on the nature and source of the claim asserted. The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)).

"[A]lthough the act of invention itself vests an inventor with a common law or 'natural' right to make, use and sell his or her invention . . . , a patent on that invention is something more." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 (Fed. Cir. 1991). A patent enlarges the "natural right, adding to it the *right to exclude others* from making, using or selling the patented invention." *Id.* A patent is a right created by statute, "as is the right of a patentee to have a remedy for infringement of his patent." *Id.* "Suit must be brought on the *patent*, as ownership only of the invention gives no right to exclude, which is obtained only from the patent grant." *Id.* at 1578-79. To exercise that right, "a plaintiff must necessarily have standing as comprehended by the patent statute." *Id.* at 1579.

Standing to sue for patent infringement derives from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376-77 (Fed. Cir. 2000). Although the inventor is initially the "patentee" by operation of law, *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993), the term "patentee" as defined by § 100(d) includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." Transfer of "title" to a patent, also called an assignment, is governed by 35 U.S.C. § 261, which states that:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

"[I]f the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of holding constitutional standing to sue another for patent infringement in its own name." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). Accordingly, "[a] party may bring an action for patent infringement only if it is the 'patentee,' *i.e.*, if it owns the patent, either by issuance or by assignment." *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1249-50 (Fed. Cir. 2000) (citing 35 U.S.C. §§ 100(d), 261, 281).

Federal Rule of Civil Procedure 12(b)(1) is the procedural mechanism for challenging standing. *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* The party asserting jurisdiction bears the burden of proof. *Id.* "The burden of demonstrating standing falls to [Plaintiff], as '[i]t is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.'" *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032–33 (Fed. Cir. 1995) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990)).

If a defendant files only a Rule 12(b)(1) motion, "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "If those jurisdictional allegations

are sufficient the complaint stands." *Id.* If the defendant advances a "'factual attack' upon the court's subject matter jurisdiction . . . the defendant submits affidavits, testimony, or other evidentiary materials." *Id.* When such materials are present, "a plaintiff is . . . required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.*; *see also Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) ("The plaintiff must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence.").

### C. PerDiem's Standing

Geotab presents a "factual attack" on the Court's subject-matter jurisdiction—raising the central issue of whether PerDiem owns the patents-in-suit, or whether Mr. Diem automatically assigned the claimed invention to Time Domain under the Assignment Agreement. If Mr. Diem automatically assigned his rights to Time Domain, then PerDiem has no standing, and the suit must be dismissed. PerDiem argues that there is no genuine dispute as to any material fact regarding ownership. The dispute turns on the language of the Assignment Agreement.

#### 1. Mr. Diem's Contractual Assignment of Patent Rights

The Court must first determine whether state contract law or Federal Circuit law applies. The Agreement states that Alabama law applies. *See* Dkt. 198-2 at 21, ¶ 9 ("This Agreement shall be governed by and construed in accordance with the law of the State of Alabama."). The Federal Circuit has said, however, that "[a]lthough state law governs the interpretation of contracts generally, *see Thatcher v. Kohl's Department Stores, Inc.*, 397 F.3d 1370, 1373 (Fed. Cir. 2005), the question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is intimately bound up with the question of standing in patent cases." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir.

8

2008). Other Federal Circuit decisions suggest otherwise. *See, e.g.*, *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996) ("Determining whether the right to sue for prior infringement has been transferred turns on the proper construction of the assignment agreements, which is a matter of state contract law."). Nonetheless, because the Federal Circuit refers specifically to *automatic assignment* provisions in decisions such as *DDB Technologies*, the Court will apply Federal Circuit law.

The Federal Circuit looks to contractual language to determine whether an assignment automatically transfers patent rights or merely creates an obligation to assign. *DDB Techs.*, 517 F.3d at 1290. If the contractual language conveys future patent rights, no further act is required by the assignee after an invention is made, and the transfer of title occurs automatically by operation of law. *Id.* For example, if an employee "agrees to grant and *does hereby grant*" patent rights, the employer's rights automatically vest when an invention is made. *Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1570 (Fed. Cir. 1991). Similarly, an agreement providing that inventions "shall belong" to a party, and that the inventor "hereby conveys, transfers and assigns" inventions to that party, creates an automatic assignment. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000).

By contrast, agreements that obligate an inventor to grant rights in the future do not automatically vest legal title to an invention. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364-65 (Fed. Cir. 2010). Agreeing "to assign," for example, provides merely a promise to assign an invention. *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42 (Fed. Cir. 2009). Likewise, an agreement providing that invention rights "will be assigned" does not create "a present assignment of an expectant interest." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-81 (Fed. Cir. 1991).

Mr. Diem's Assignment Agreement with Time Domain unambiguously creates an automatic assignment of Mr. Diem's "Work Product," defined as:

> all inventions, improvements, discoveries, technical developments, and works of authorship, whether or not patentable or copyrightable, which I conceive, reduce to practice, or author, solely or jointly with others, relating to or useful to Company's business as presently conducted or as conducted at any future time during my term of employment.

Dkt. 198-2 at 19 ¶ 3. The Agreement specifies that "I *hereby assign* to Company my entire right to all the Work Product, which Work Product is and will be the sole and exclusive property of Company . . . ." *Id.* at 19-20 ¶ 3 (emphasis added). Such language is sufficient to automatically assign Mr. Diem's "Work Product" to Time Domain.

The Assignment Agreement, however, contains an additional clause. Immediately following the automatic assignment provision, the Agreement states:

> provided however, that *I shall not be required to assign* to Company any invention that I developed entirely on my own time without using Company's funds, equipment, materials, facilities or trade secret information except for those inventions that either: (i) relate at the time of conception or reduction to practice of the invention to Company's business, or actual or demonstrably anticipated research or development of Company, or (ii) result from or are related to or suggested by any Company research, development or other activities, including, without limitation, any work performed by me for Company."

Dkt. 198-2 at 19-20 ¶ 3.

According to PerDiem, this additional clause indicates that "there is never any automatic assignment of inventions that Mr. Diem creates on his own time and without using Time Domain's funds/equipment/etc." Dkt. 209 at 13. "Rather, there is only a 'requirement' to assign such inventions if they relate to or result from Time Domain's business or research." *Id.* Thus, PerDiem contends that only "Work Product" is automatically assigned, but such Work Product does not include inventions developed by Mr. Diem independently of Time Domain. *Id.* Mr.

10

Diem only has an obligation to assign his independent inventions if those inventions meet the relatedness requirements defined by the Assignment Agreement. *Id.*

Geotab contends that the definition of "Work Product" makes no distinction between Mr. Diem's independent inventions and inventions he develops using Time Domain's resources. Dkt. 221 at 4-5. All "Work Product," whether developed using Time Domain's resources or not, is automatically assigned to Time Domain. *Id.* Thus, according to Geotab, the Agreement merely exempts Mr. Diem's independent inventions from the automatic assignment provision if those inventions do not meet the relatedness requirements. *Id.* Geotab argues that the claimed inventions meet the relatedness requirement, and thus automatically assigned to Time Domain. *Id.*

The Court finds that the Assignment Agreement is ambiguous. On one hand, all "Work Product" is expressly and automatically assigned to Time Domain, without reference to whether such Work Product is independently developed by Mr. Diem without using company resources. On the other hand, the Agreement appears to create a future obligation to assign Mr. Diem's independent inventions if those inventions meet the relatedness requirements. The fact that the Agreement states that Mr. Diem "shall not be required to assign" certain independent inventions suggests that such inventions are only subject to a future assignment obligation if the relatedness requirements are met. *See Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42 (Fed. Cir. 2009); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-81 (Fed. Cir. 1991).

2. Resolution of an Ambiguous Assignment

Ambiguity in a contract is ordinarily resolved by ascertaining the parties' intent, either from the contract as a whole or by examining parol evidence. *See, e.g.*, *Euclid Chem. Co. v.*

11

*Vector Corrosion Techs., Inc.*, 561 F.3d 1340, 1343-44 (Fed. Cir. 2009). While interpretation of the express language of a patent assignment agreement is governed by Federal Circuit law, *DDB Techs.*, 517 F.3d at 1290, resolution of ambiguity in a patent assignment appears to be governed by state law, *see Euclid Chem. Co.*, 561 F.3d at 1343-44 (applying Ohio law to resolve ambiguous patent assignment agreement). Assuming an ambiguous assignment provision must be resolved according to state law, Alabama law applies. *See* Dkt. 198-2 at 21, ¶ 9 ("This Agreement shall be governed by and construed in accordance with the law of the State of Alabama.").

      *a) Applicable Alabama Contract Law*

Under Alabama law, a court confronted with an ambiguous contract provision "must employ established rules of contract construction to resolve the ambiguity." *Voyager Life Ins. Co. v. Whitson*, 703 So. 2d 944, 948 (Ala. 1997). Alabama courts continue to treat "patent" and "latent" ambiguities differently. *See Kelmor, LLC v. Alabama Dynamics, Inc.*, 20 So. 3d 783, 790-91 (Ala. 2009). A patent ambiguity "results when a document, on its face, contains unclear or unintelligible language or language that suggests multiple meanings." *Id.* (quoting *Smith v. Ledbetter*, 961 So. 2d 141, 145 (Ala. Civ. App. 2006)). An ambiguity is latent, by contrast, "when the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Id.* at 791 (quoting *Smith*, 961 So. 2d at 145). The classic example of a latent ambiguity comes from a contract in which two parties contracted for a shipment of cotton to arrive on a ship named "Peerless," and extrinsic evidence showed that there were two ships named Peerless. *See Meyer v. Meyer*, 952 So. 2d 384, 392 (Ala. Civ. App. 2006) (discussing *Raffles v. Wichelhaus*, 2 Hurl & C. 906; 159 Eng. Rep. 375 (1864))

Extrinsic evidence is admissible to resolve a latent ambiguity, but it is not admissible to resolve a patent ambiguity. *Gafford v. Kirby*, 512 So. 2d 1356, 1363 (Ala. 1987). Accordingly, if a court finds a latent ambiguity and resorts to extrinsic evidence, the jury must resolve the ambiguity on the basis of the extrinsic evidence. *See McDonald v. U.S. Die Casting & Dev. Co.*, 585 So. 2d 853 (Ala.1991); *see also Alfa Life Ins. Corp. v. Johnson*, 822 So. 2d 400, 404-05 (Ala. 2001). The court alone must resolve a patent ambiguity, on the other hand, using established rules of contract interpretation and canons of construction. *Alfa Life Ins.*, 822 So. 2d at 404-05; *Kelmor*, 20 So. 3d at 792 n.5.

  *b) Role of the Jury*

The parties dispute whether the Court may submit disputed factual issues regarding the Assignment Agreement to the jury. Geotab initially argued that a "[p]atentee has no right to a jury trial on the issue of standing, which can be decided by the Court upon completion of discovery." Dkt. 198 at 17 (citing *DDB Techs.*, 517 F.3d at 1291-92). Geotab has since changed its position, arguing that facts underlying the meaning of the Assignment Agreement should be decided by the jury. Dkt. 239 at 8 ("if . . . the terms of the agreements were ambiguous, a jury should decide those issues") (citing Alabama law). PerDiem maintains that "any factual findings relevant to ownership or standing would be made by the Court, not a jury, in the course of adjudicating Geotab's motion." Dkt. 231 at 9 (citing *Bushberger v. Protecto Wrap Co*, No. 07-CV-8, 2008 WL 725189, at *4 (E.D. Wis. Mar. 17, 2008)).

While Geotab is correct that under Alabama law the jury should resolve any dispute regarding evidence extrinsic to a contract, the jury's role in deciding facts implicating Article III subject-matter jurisdiction, such as whether a plaintiff has standing to sue, is governed by Federal Circuit law. *See DDB Techs.*, 517 F.3d at 1291. To determine the role of the jury, the

Federal Circuit looks "to the degree of intertwinement between the jurisdictional facts and the facts underlying the merits of the cause of action to determine whether dismissal on jurisdictional grounds is appropriate, or whether resolution of the issues must await . . . [a jury] trial on the merits." *Id.* (citing *Torres–Negrón v. J & N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007)). Interpretation of an employment agreement, "which depends in part on state contract law and in part on [Federal Circuit] law regarding patent assignment clauses, is not so intertwined with the substantive federal patent law governing . . . infringement claims and . . . invalidity counterclaims" such that a court must afford a party a jury trial to resolve the jurisdictional issue. *Id.* Thus, Federal Circuit precedent allows the Court to find any facts regarding ambiguity in Mr. Diem's Assignment Agreement.

Whether the Court alone is required to resolve the ambiguity is a more unsettled question that has not been addressed by the Federal Circuit. Early Supreme Court precedent suggests that the jury may resolve a jurisdictional dispute such as the one at issue here. *Gilbert v. David*, 235 U.S. 561, 568 (1915) ("But while the court might have submitted the [jurisdictional] question to the jury, it was not bound to do so."). This early precedent, however, came before the Federal Rules of Civil Procedure were promulgated under the Rules Enabling Act of 1934. *See* 5C. 651, 48 Stat. 1064, 28 U.S.C. §§ 723b, 723c, 28 U.S.C.A. § 723b, 723c; *Sibbach v. Wilson & Co.*, 312 U.S. 1, 7 (1941). Rule 12 states that "any defense listed in Rule 12(b)(1)-(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided ***before trial unless the court orders a deferral until trial***." Fed. R. Civ. P. 12(i) (emphasis added). Because Rule 12 distinguishes "before trial" from "until trial," the Court understands "until" to be inclusive, i.e., a jurisdictional dispute raised by a 12(b)(1) motion may be decided by the jury.

14

The weight of authority, however, suggests that the jury is only permitted to resolve a jurisdictional dispute that intertwines or depends on the merits. *See* Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 n.67 (3d ed.) ("The district court, not a jury, must weigh the merits of what is presented on a Rule 12(b)(1) motion to dismiss, including resolving any issues of fact.") (collecting cases); *E.g.*, *Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 38-39 (9th Cir. 1978). The Court is unaware of a decision in which a factual dispute raised by a pre-trial 12(b)(1) motion was resolved by the jury when the factual dispute was not intertwined with the merits of the case.[1] In addition, assuming state law governs the ambiguous assignment, Alabama law does not permit the jury to resolve a "patent" ambiguity. *See Gafford*, 512 So. 2d at 1363. Accordingly, the Court will resolve the ambiguity in Mr. Diem's Assignment Agreement.

    *c) Interpretation of Mr. Diem's Assignment Agreement*

The Assignment Agreement includes a "patent," rather than latent, ambiguity. The Agreement defines the "Work Product" subject to automatic assignment without reference to whether such Work Product was created without using Time Domain's resources. Dkt. 198-2 at 19 ¶ 3. Yet the Agreement also provides that Mr. Diem "shall not be required to assign" independent inventions that do not meet the relatedness requirements. Dkt. 198-2 at 20 ¶ 3. The ambiguity therefore arises from the face of the instrument. Accordingly, the Court is confined under Alabama law to determining the parties' intent on the basis of the contract as a whole, using ordinary contract interpretation and construction canons, and may not look to extrinsic evidence. *See Voyager*, 703 So. 2d at 948.

---

[1] In *Torres-Negrón*, the First Circuit held that "the district court did not err by allowing the case to proceed to trial" before concluding that it had subject-matter jurisdiction, 504 F.3d at 163, but the jurisdictional dispute was not raised until after trial began, *id.* at 155.

The Assignment Agreement as a whole suggests that inventions Mr. Diem conceives or develops without using Time Domain's resources are not automatically assigned to Time Domain. The third paragraph of the Agreement relates to Mr. Diem's continuing obligations should his employment be terminated. Dkt. 198-2 at 19 ¶ 3. This paragraph provides that "in the event Employee is required to give testimony or take other actions that require more than, for example, *a signature on an assignment document* . . . the Employee shall be compensated on an hourly basis . . . ." *Id.* (emphasis added). The fourth paragraph of the Agreement requires Mr. Diem "to cooperate with Company . . . in the procurement and maintenance of Company's rights in **Work Product**, including, but not limited to, patents and copyrights . . . [and] sign all papers which Company may deem *necessary* and desirable *for vesting* Company . . . with such rights." *Id.* at 20 ¶ 3 (emphasis added).

These provisions suggest that certain Work Product is not automatically assigned to Time Domain. If all Work Product automatically transferred to Time Domain, it would be unnecessary for Mr. Diem to sign any paper to vest Time Domain with rights. *See DDB Techs.*, 517 F.3d at 1290 ("If the contract expressly grants rights in future inventions, 'no further act [is] required once an invention [comes] into being,' and 'the transfer of title [occurs] by operation of law.'") (quoting *Filmtec*, 939 F.2d at 1573). This interpretation is consistent with the "well-established rule of contract construction that any ambiguity in a contract must be construed against the drafter of the contract," which in this case is Time Domain. *See SouthTrust Bank v. Copeland One, LLC*, 886 So. 2d 38, 43 (Ala. 2003). Accordingly, the Court finds that Mr. Diem's independent inventions are at most subject to a future obligation to assign, depending on whether those inventions meet the relatedness requirements defined by the Agreement. *See* Dkt. 198-2 at 20 ¶ 3.

The record evidence establishes that Mr. Diem developed the inventions claimed in the patents-in-suit independently without using Time Domain's resources. Mr. Diem's uncontroverted testimony establishes that he did not work on the inventions during working hours, did not store drafts of any relevant documents or source code on Time Domain computers, and did not maintain any documents related to the relevant technology in Time Domain's office. *See* Dkt. 221-3 at 213:20-214:20. The Court therefore finds that the inventions claimed in the patents-in-suit were not automatically assigned to Time Domain. The Court need not address whether the inventions meet the relatedness requirements of the Assignment Agreement.[2] Regardless of any obligation to assign, title to Mr. Diem's independent inventions vested in Mr. Diem and was thereafter transferred to third parties, and eventually to PerDiem. PerDiem owns the patents-in-suit and has standing to sue.

   d) *Extrinsic Evidence*

To the extent Federal Circuit law governs resolution of ambiguity in an assignment, the Court will address any extrinsic evidence[3] that informs the intent of the parties because, unlike Alabama courts, the Federal Circuit appears to follow the majority of jurisdictions that permit resort to extrinsic evidence regardless of whether the ambiguity is patent or latent. *See, e.g.*, *Metro. Area Transit, Inc. v. Nicholson*, 463 F.3d 1256, 1260 (Fed. Cir. 2006) ("Having found the

---

[2] Even if Time Domain has an interest in the patents-in-suit that has not lapsed under Alabama's six-year statute of limitations, *see* Ala. Code § 6-2-34, Time Domain's interest in preserving the validity of the patents-in-suit is adequately protected by PerDiem, *see, e.g., Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998). Dismissal for failure to join under Rule 19 would not be warranted.

[3] Although Mr. Diem's Employment Agreement contains an integration clause, *see* Dkt. 198-2 at 17 ¶ 4, and thus may be totally integrated, courts are permitted to consult extrinsic evidence to resolve ambiguity in a totally integrated contract. *See, e.g., Golden Gate Acceptance Corp. v. Gen. Motors Corp.*, 597 F.2d 676, 680 (9th Cir. 1979); *Nutrena Mills, Inc. v. Earle*, 14 Wis. 2d 462, 466–67, 111 N.W.2d 491, 493 (1961); *Gajewski v. Bratcher*, 221 N.W.2d 614, 626 (N.D. 1974); *Green v. K. S. Webster & Sons*, 77 Idaho 281, 283, 291 P.2d 864, 865 (1955).

contract ambiguous, we may appropriately look to extrinsic evidence to aid in our interpretation of the contract.").

Mr. Diem and Time Domain's course of performance is consistent with the Court's conclusion that the parties did not intend Mr. Diem's independent inventions to automatically assign to Time Domain. Mr. Diem testified that he told Mark Roberts, Time Domain's then-director of intellectual property, about his independent work. *See* Dkt. 198-6 at 444:12-20. Mr. Roberts determined that Mr. Diem's inventions "should not be the rightful intellectual property of Time Domain Corporation." Dkt. 198-8 at 122:18-24. Regardless of whether Mr. Roberts had authority to make that decision, and regardless of whether Mr. Diem informed the proper authorities, Mr. Roberts testified that the "standard practice" was for an employee to bring their independent work to Time Domain's attention. *Id.* at 80:16-21. Finally, Mr. Diem testified that he understood the Assignment Agreement to mean that if he was "doing anything on company equipment, using company materials for the company, the company owned it." Dkt. 221-4 at 439:5-14. Geotab did not submit contrary evidence of Time Domain's intent.

Mr. Diem's understanding of the Assignment Agreement, the "standard practice" described by Mr. Roberts, Mr. Diem's efforts to inform Time Domain of his independent work, and Mr. Roberts evaluation of that work, suggests that rights to a Time Domain employee's independent invention did not automatically transfer under the Assignment Agreement. If all "Work Product," as defined by the Agreement, automatically transferred, then Mr. Roberts would have been required to do more than evaluate an employee's independent work to determine whether Time Domain "should" own it. Steps would have been required to assign the invention back to the employee. Such steps were not taken here. The testimony is consistent with the conclusion that Mr. Roberts evaluated an employee's independent invention to determine

18

whether the employee had an obligation to assign the invention to Time Domain. Accordingly, the extrinsic evidence supports the Court's interpretation of the Assignment Agreement.

### III. CONCLUSION

For the reasons explained above, IT IS **RECOMMENDED** that Geotab's Rule 12(b)(1) Motion to Dismiss (Dkt. 198) be DENIED. Consequently, PerDiem's Motion for Summary Judgment on Geotab's Standing Defense (Dkt. 172) should be DENIED AS MOOT.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report by OCTOBER 31, 2016 shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 17th day of October, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE