**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PerdiemCo, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>Industrack LLC,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:15-cv-727-JRG-RSP |
| PerdiemCo, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>Geotab Inc., Geotab USA, Inc.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:15-cv-726-JRG-RSP |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Exclude Certain Opinions of Geotab's Damages Expert Michael Tate (Dkt. No. 175, "PerDiem's Motion") filed by Plaintiff PerDiemCo, LLC ("PerDiem") and the Motion to Exclude Testimony of Plaintiff's Expert on Damages (Dkt. No. 179) ("Geotab's Motion") filed by Defendants Geotab Inc. and Geotab USA, Inc. ("Geotab"). For the following reasons, the Court is of the opinion that PerDiem's Motion should be **DENIED** and Geotab's Motion should also be DENIED.

## APPLICABLE LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

Regarding damages, the Federal Circuit has stated that "estimating a 'reasonable royalty' is not an exact science. As such, the record may support a range of 'reasonable' royalties, rather than a single value. Likewise, there may be more than one reliable method for estimating a reasonable royalty." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). However, "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . . [unless] the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Garretson v. Clark*, 111 U.S. 120, 121 (1884).

Accordingly, proof of damages must be carefully tied to "the claimed invention's footprint in the market place." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."); *CSIRO v. Cisco Sys.*, 809 F.3d 1295 (Fed. Cir. 2015) ("[D]amages awarded for patent infringement must reflect the value attributable to the infringing features of the product, and no more").

**ANALYSIS**

**A. Geotab's Motion**

Geotab sets forth three grounds to exclude the testimony of Mr. Justin McLean. Geotab argues that Mr. McLean's opinion (1) violates Federal Circuit law on apportionment; (2) relies on non-comparable licenses; and (3) relies improperly on third-party confidential information that would not have been available to the parties during the hypothetical negotiation. The Court considers each ground in-turn

First, Geotab argues that Mr. McLean does not do a proper apportionment analysis. According to Geotab, Mr. McLean applies an un-apportioned reasonable royalty to an un-apportioned royalty base.

As an initial matter, as the Federal Circuit explained in *Ericsson*, experts do not have to apportion the royalty base. Apportionment may be done in various ways, for example, "by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." *Ericsson,* 773 F.3d at 1226. Accordingly, apportionment may occur in the royalty base, royalty rate, or anywhere in between

so long as "the ultimate reasonable royalty award [is] based on the incremental value that the patented invention adds to the end product." *Id.*

The parties do not dispute that Mr. McLean does not apportion the royalty base. Further, neither party disputes that the base plan subscription that Mr. McLean uses, priced at $10.83, is (1) the smallest salable unit and is (2) a multi-featured product containing patented and unpatented features requiring further apportionment. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed.Cir.2009). PerDiem argues that Mr. McLean performs such apportionment in his calculation of the royalty rate, a flat $.40 fee per subscription month. The question is whether that is an accurate representation of Mr. McLean's opinion.

Mr. McLean's apportionment analysis entails a weighing of three different approaches to calculating a reasonable royalty: two quantitative approaches (Comparable Licenses, Design Around) and a qualitative approach (*Georgia-Pacific*). Each of these approaches involves some level of apportionment. The Design Around Approach "examines the costs that the infringer would have incurred to generate the benefits of the patent, as closely as possible, without practicing the patent" and "evaluates the cost of avoiding infringement by adopting the next best, non-infringing, alternative." (Dkt. No. 179-3 at 58.) Accordingly, this approach necessarily involves some degree of apportionment because it ties directly to the cost of removing the patented feature and implementing an alternative to the patented feature, as opposed to non-patented features.

This approach yields a savings per asset per month range of $1.85 to $3.70. *Georgia-Pacific* factor 13 requires consideration of "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements" and in McLean's report, he applies principles of apportionment within his discussion of this factor. (*See* Dkt. No. 179-3 at

75–77.) To some extent, even the Comparable License Approach described below that yields a $.11 to $.44 cent range (which PerDiem characterizes as "pre-apportionment") contains apportionment as the method winnows down to the accused functionality—those licenses pertain to the rate paid for "fleet management software or location/GPS tracking software" and not the other features that may exist in the base plan subscription.

While it is true that Mr. McLean does not disclose how he weighs or combines these metrics to arrive at his final royalty, estimating a reasonable royalty and apportionment is never an exact science. At some level an expert must be allowed to rely on and use his or her judgment, provided the opinion is supported by facts and data. The Court is not willing to say that Mr. McLean's tripartite approach fails to apportion damages to cover only the allegedly patented features, or that his opinion is not supported by facts and data. Further, his opinion is not so opaque as to be immune from rigorous cross-examination, the "traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Accordingly, the Court will not exclude Mr. McLean's testimony on apportionment; however, Geotab may request the Court give a cautionary instruction regarding apportionment in its final jury instructions. *See Ericsson*, 773 F.3d at 1228 (Fed. Cir. 2014).

Second, Geotab argues that Mr. McLean's opinion is unreliable because his Comparable License Approach relies on transactions that are not adequately related to the patented technology or the hypothetical negotiation. According to Geotab, Mr. McLean ignores four licenses of record to the patented technology, and instead relies on three unrelated licenses from third-party transactions. Geotab submits that these licenses involve separate patents, technologies, products and circumstances, and do not compare technically or economically to the license that would emerge from the hypothetical negotiation of the parties.

To locate these third-party licenses, Mr. McLean used a royalty database, RoyaltySource. Geotab contends that it is improper for damages experts to use royalty databases to determine a reasonable royalty. (Dkt. No. 179 at 14.) However, the cases it cites support no such rule. For example, in *Atlas IP, LLC v. Medtronic, Inc.*, No. 12-cv-23309, 2014 WL 5741870, at 86 (S.D. Fla. Oct. 6, 2014), the court excluded opinions on a reasonable royalty based on comparable licenses derived from a royalty database. In forming his opinion, the expert in *Atlas IP* looked to only general factors, did not obtain any of the underlying agreements, and made no effort to examine what the subject patents were and whether they were comparable to the patents-in-suit. Geotab also cites *Chico's Fas, Inc. v. Clair*, No. 2:13-cv-729, 2015 WL 3496003, at *4 (M.D. Fla. Jun. 3, 2015), but there, the *Chico's* court did not exclude the opinion because the expert relied on generic industry data derived from a royalty database, but rather because some of the licenses used from the royalty database bore little relation to the relevant technology: bras and brassieres. In the abstract, there is simply no significance to the fact that an expert finds such comparable licenses from a royalty database. As PerDiem correctly argues, these cases merely stand for the uncontroversial proposition that licenses from a royalty database are unreliable ***if*** those licenses are not related to the technology at issue. (Dkt. No. 201 at 12.)

To that end, Geotab criticizes Mr. McLean's failure to analyze whether the patented technology in the third-party transactions was essential to the licensed products being sold, or whether it was only a small component of the licensed product. (Dkt. No. 179 at 11.) GeoTab argues that the functionalities enabled by the third-party transactions are "far more economically important than the functionality purportedly covered by the asserted patents." (*Id.*) Geotab's argument might be correct, and assuming so, those criticisms go to whether the third-party transactions are economically comparable to the hypothetical license in this case. Notably,

Mr. McLean's alleged failure to assess the importance of the technology may bear on his apportionment analysis that GeoTab believes to be inadequate. However, such criticisms go to the weight and sufficiency of the evidence, not its reliability. *See Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, 2015 WL 11089599, at *2 (E.D. Tex. June 4, 2015).

Likewise, GeoTab attacks the technical comparability of the patents-in-suit to the third-party licenses. GeoTab argues that the fact that the patent-in-suit and the third-party licenses allegedly both concern "vehicle location technology" is not enough. (Dkt. No. 179 at 16.) However, the record reflects that Mr. McLean did more. He first obtained a group of third-party licenses by searching the RoyaltySource database for transactions that relate to "the licensing of fleet management software or location/GPS tracking software." (Dkt. No. 179-3 at 49) That search yielded 25 licenses in an exhibit to his report. (*Id.*) Then, he provided this list to PerDiem's technical expert, Dr. Schonfeld, who determined that the involved technology was comparable to the patent-in-suit. (*Id.* at 179-3 at 49.) Mr. McLean opines that each license covers tracking systems using GPS technology. (*Id.* at 50–55.) Mr. McLean's methodology on technical comparability is sufficiently disclosed and traceable as to allow rigorous cross-examination.

In sum, GeoTab draws many meaningful distinctions between the hypothetical license between the parties and the third-party licenses Mr. McLean analyzed. However, as the Federal Circuit stated in *ActiveVideo Networks*, a case relied on by Geotab, disagreements with the conclusions and factual assumptions and considerations underlying those conclusions go to the weight to be afforded the testimony, not its admissibility. *See ActiveVideo Networks v. Verizon Communications, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012). Here, the fact that the licenses may not be perfectly analogous to the patents-in-suit—something that is almost inherent to any comparable license approach—generally goes to the weight of the evidence, not its admissibility.

Last, GeoTab argues that Mr. McLean should not be allowed to rely on third-party confidential information in his analysis (Dkt. No. 179 at 15.) GeoTab agrues that during a hypothetical negotiation, the parties could only rely on accessible third-party information. Therefore, Defendant agrues that to the extent the parties could not have accessed evidence cited by Mr. McLean during a hypothetical negotiation, that information should be excluded. The Court finds no persuasive authority to support this contention.

**B. PerDiem's Motion**

PerDiem lays out a handful of reasons to exclude some or all of the report of Mr. Michael Tate, each of which is considered below.

The principal data point that Mr. Tate uses to derive his damages amount is a lump-sum figure derived from a single settlement agreement that PerDiem made with Telogis, another company that PerDiem previously accused of infringing the patents-in-suit. (Dkt. No. 175 at 4) PerDiem argues that such reliance is improper.

"The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). However, litigation licenses are not *per se* inadmissible. *See Res-Q-Net.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). Far from it, the Federal Circuit has repeatedly recognized the relevance of settlement agreements to the issue of reasonable royalties. *See In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Our cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties."). However, because litigation licenses are likely influenced to some degree by the litigation, the Court must apply scrutiny in determining the admissibility of such licenses. Accordingly, "the Court assesses

litigation licenses on a case-by-case basis in determining their admissibility." *ReedHycalog, UK, Ltd. v. Diamond Innovations Inc.*, 727 F. Supp. 2d 543, 547 (E.D. Tex. 2010).

Mr. Tate's reliance on the Telogis Agreement crosses the threshold of admissibility. First, the PerDiem settlement agreements (including the Telogis Agreement) are the only licenses that cover the patents-in-suit, and therefore Mr. Tate may reasonably conclude that such agreements are the most comparable licenses available. Second, Mr. Tate's report provides detailed discussion as to how these agreements are similar and different from the hypothetical license in the case. (*See* Dkt. No. 199-1 at 13–21.) "So long as the jury is provided evidence of these similarities and differences so that they may consider the relevance of the challenged settlement agreements for themselves, the agreements may properly be admitted into evidence." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4129193, at *5 (N.D. Cal. June 8, 2015). Mr. Tate's report adequately discloses such evidence.

PerDiem next argues that Mr. Tate's reliance on the Telogis Agreement to the exclusion of other agreements is a classic example of "cherry-picking." However, Mr. Tate explains in his report precisely why he relies on the Telogis agreement, to the exclusion of the other settlement agreements. (*See* Dkt. No. 199-1 at 17) ("Telogis is a larger company, sells more products that had been accused of infringing the PerDiem patents, and has a larger market share . . . . I would expect the appropriate paid-up lump sum value for Geotab in this dispute to be at most the [amount] paid by Telogis.") To the extent PerDiem argues that Mr. Tate should have considered other settlement agreements, its criticism goes to the weight of Mr. Tate's opinion, not its admissibility. Similarly, PerDiem's other criticisms concerning Mr. Tate's reliance on the Telogis agreement—for example, that Mr. Tate did not properly consider PerDiem's "early adopter" policy—go to weight, not admissibility.

According to PerDiem, the "most serious" and "particularly egregious" instance of Mr. Tate's "cherry-picking" is with respect to the omission of a settlement agreement entered into between PerDiem and former-Defendant Teletrac. (Dkt. No. 175 at 10; 207 at 3) This argument is without merit. PerDiem claims Mr. Tate should have considered an agreement that was executed on August 11, 2016—(1) one month after Mr. Tate served his rebuttal report on July 11, 2016; (2) approximately two weeks after Mr. Tate's deposition; and (3) ten days after PerDiem filed the motion to strike his report in which PerDiem argues that Mr. Tate did not consider what was then a non-existent agreement. PerDiem's notion that the Court should strike an expert opinion for not considering an agreement executed after the motion to strike itself tests the very limits of credulity. The Court cannot fault Mr. Tate for not relying on that which did not exist.

PerDiem justifies its argument by stating that it provided GeoTab with the general terms of the agreement in a summary chart. (Dkt. No. 199-9.) The Court disagrees. PerDiem's chart—dated July 21, 2016—is at best incomplete and at worst inaccurate. Either way, Mr. Tate's position of waiting to form an opinion until he could review the final agreement with all the terms is reasonable. Moreover, since filing its motion, PerDiem has provided GeoTab and Mr. Tate with the actual Teletrac agreement, and Mr. Tate has supplemented his opinions. PerDiem's supplemental argument is now moot.

PerDiem's remaining criticisms all go to weight, not admissibility. For example, PerDiem argues that Mr. Tate's opinion on Geotab settlement licenses entered into with third-parties is unreliable. Mr. Tate provides sufficient and detailed analysis to explain his opinion why the patents underlying such agreements that cover the accused products are comparable to the patents-in-suit. (Dkt. No. 199-1 at 17–21.). PerDiem also argues that the Court should exclude

Mr. Tate's opinions concerning usage data. To show that the actual usage of the accused functionality is minimal, Mr. Tate opines that (1) only 9.4% of end user databases worldwide are configured to use the accused functionality; (2) 36.5% of Geotab devices are configured to provide at least one real-time geofence based alert, and (3) only 15.1%[1] of all rules in effect were geofence rules with notifications. PerDiem argues that Mr. Tate's reliance on worldwide user databases to show the value of the accused functionality erroneously includes end user databases outside the United States, beyond the territorial reach of patent damages. However, the record reflects that Mr. Tate uses such information to establish usage of the accused feature, and further that Mr. Tate opines that usage of the accused feature is consistent across its customer base. (Dkt. No. 199 at 13.) Given this, there is nothing unreliable about Mr. Tate's use of the customer usage data.

Finally, PerDiem takes issue with Mr. Tate's apportionment analysis. PerDiem claims that Mr. Tate "double apportioned" by applying a 4% royalty rate from Mr. McLean's analysis to a royalty base substantially smaller than the base plan, the royalty base Mr. McLean uses. PerDiem claims that this constitutes double apportionment, *i.e.*, applying an already apportioned royalty rate to an apportioned royalty base, because Mr. McLean's royalty rate already accounts for apportionment. The Court disagrees. In opposing Geotab's motion to exclude Mr. Mcean, PerDiem has argued that the 1% to 4% range Mr. McLean derives from a Comparable License Approach is a pre-apportionment metric. (Dkt. No. 201 at 7–8; Dkt. No. 225 at 4.) Mr. Tate applies the top end of this pre-apportioned range to an apportioned royalty base. This is not double apportionment; rather Mr. Tate apportions in a different way based on usage data. That the top-end of Mr. McLeans's pre-apportioned range of comparable royalties coincides with

1 Mr. Tate appears to have accounted for any error in applying the 15.1% figure at his deposition and has opined that the outcome of this correction would have minimal impact on his analysis.

Mr. McLean's post-apportioned reasonable royalty in this case might question the credibility of Mr. McLeans's own apportionment analysis, but it does not mean Mr. Tate double apportioned.

## CONCLUSION

For the reasons stated herein, PerDiem's Motion (Dkt. No. 175) is **DENIED** and Geotab's Motion (Dkt. No. 179) is **DENIED**.

**SIGNED this 9th day of November, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE